*United States v. Epps*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of July, two thousand eighteen.

Present:
> ROBERT A. KATZMANN,
> *Chief Judge*,
> PIERRE N. LEVAL,
> *Circuit Judge*,
> ANDREW L. CARTER,
> *District Judge*.[*]

UNITED STATES OF AMERICA,

>*Appellee*,

>v.                                                                          No. 17-147

RONALD EPPS, AKA TODD EPPS,

>*Defendant-Appellant*.

For Appellant:                          CHERYL MEYERS BUTH, Meyers Buth Law Group, Orchard Park, NY.

---

[*] Judge Andrew L. Carter of the United States District Court for the Southern District of New York, sitting by designation.

For Appellee: MONICA J. RICHARDS, Assistant United States Attorney, *for* James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Arcara, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Ronald Epps appeals from a judgment of the district court (Arcara, *J.*) following his conviction at trial for wire fraud, in violation of 18 U.S.C. § 1343; mail fraud, 18 U.S.C. § 1341; two counts of damaging with fire a building used in interstate commerce, 18 U.S.C. § 844(i); two counts of using fire to commit a felony, 18 U.S.C. § 844(h); possessing an unregistered destructive device, 26 U.S.C. §§ 5845(f), 5861(d); maintaining a drug-involved premises, 21 U.S.C. § 856(a)(1); possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1); and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Epps raises a variety of challenges to his convictions. We review *de novo* challenges to the sufficiency of evidence, *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012), and an alleged constructive amendment of the indictment, *United States v. Agrawal*, 726 F.3d 235, 259 (2d Cir. 2013). We review for abuse of discretion the denial of a motion to sever under Federal Rule of Criminal Procedure 14(a), *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004); the denial of a motion to bifurcate a felon-in-possession count, *United States v. Page*, 657 F.3d 126, 132 (2d Cir. 2011); a district court's evidentiary rulings, *United States v. Curley*, 639 F.3d 50, 56 (2d Cir.

2

2011); and the restriction of a defendant's opening statement, *United States v. Salovitz*, 701 F.2d 17, 21 (2d Cir. 1983). We conclude that Epps's challenges are without merit and therefore affirm.

First, Epps challenges the sufficiency of the evidence supporting his wire fraud conviction, which was based on his murder of Angela Moss and subsequent attempt to collect on her life insurance policy. "On such a challenge, we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility," and "[w]e will sustain the jury's verdict so long as *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hawkins*, 547 F.3d 66, 70 (2d Cir. 2008) (internal quotation marks omitted).

Epps specifically contends that there was insufficient evidence of his intent to defraud State Farm at the time of Moss's murder. In order to prove wire fraud, the Government must "establish that the defendant had fraudulent intent" and "that some harm or injury to the property rights of the victim was contemplated." *United States v. McGinn*, 787 F.3d 116, 123 (2d Cir. 2015). The evidence at trial showed that Epps was eager to change Moss's life insurance policy in order to make himself the primary beneficiary and increase the policy amount, that Moss was murdered less than four weeks after the change to the policy went into effect, and that Epps sought to collect on the policy only a few days after Moss's murder. Thus, a reasonable jury could conclude that Epps killed Moss with the intent to collect on her life insurance policy. Epps's suggestion that State Farm suffered no loss as a result of the murder because it already was obligated to pay benefits in the event of Moss's death is meritless. If Moss had not died while the policy was in effect, State Farm would not have been obligated to pay on the policy. Accordingly, Epps's sufficiency challenge fails.

Second, Epps argues that the district court erred in denying his motion to sever the wire fraud count (which related to Moss's murder and her life insurance policy) from the mail fraud count (which related to arson and fire insurance) and other arson-related counts. "The denial of a motion to sever under Rule 14 . . . 'will not be overturned unless the defendant demonstrates that the failure to sever caused him substantial prejudice in the form of a miscarriage of justice.'" *Sampson*, 385 F.3d at 190 (quoting *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991)). Because the wire fraud and mail fraud counts both involved corrupt schemes to commit crimes so as to collect fraudulently on insurance policies, they were sufficiently similar, *see* Fed. R. Crim. P. 8(a), to be properly joined in the first instance. In arguing that his motion to sever these counts under Rule 14 was improperly denied, Epps did not show that he suffered a miscarriage of justice. Therefore, we conclude that the district court did not abuse its discretion in denying Epps's motion to sever.

Third, Epps challenges the denial of his motion to bifurcate proof of the felon-in-possession count, arguing that our decision in *United States v. Jones*, 16 F.3d 487, 492–93 (2d Cir. 1994), requires bifurcation. We disagree. Considering the circumstances present here, including that the district court limited the evidence of Epps's prior felony to a single stipulation and provided a limiting instruction, we are not convinced that the denial of the motion to bifurcate constituted an abuse of discretion. *See Page*, 657 F.3d at 132.

Fourth, Epps argues that the introduction of evidence that he possessed firearms other than the revolver identified in the § 924(c) and § 922(g) counts constructively amended the indictment as to those counts. "To prevail on such a claim, 'a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the

4

grand jury's indictment.'" *Agrawal*, 726 F.3d at 259 (quoting *United States v. Frank*, 156 F.3d 332, 337 (2d Cir. 1998)). This Epps cannot do, because the district court's instructions clearly required the jury to find that Epps possessed the revolver specified in the indictment in order to convict Epps for violations of § 924(c) and § 922(g).[1]

Fifth, Epps argues that evidence of his possession of other guns should not have been admitted under Federal Rules of Evidence 403 and 404. Under Rule 404, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). However, such evidence is admissible for "any non-propensity purpose." *Curley*, 639 F.3d at 57 (internal quotation marks omitted). The evidence in question had proper "non-propensity purpose[s]." *Id.* Testimony regarding Epps's possession of unidentified guns shortly after Moss's murder supported a likelihood that he possessed the 9mm handgun used to commit the murder, and his request to associates to dispose of the unidentified guns immediately following the murder tended to show consciousness of guilt. Moreover, the district court did not abuse its discretion in concluding that the significant probative value of this evidence for the wire fraud count was not "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

---

[1] To the extent that Epps argues that there was insufficient evidence that he possessed the revolver in furtherance of a drug trafficking crime on August 28, 2009, we disagree. Considering that the revolver was found in a shoebox with drug residue, a digital scale, and drug packaging materials, as well as testimony that Epps carried the revolver during drug transactions at his home, we conclude that there was sufficient evidence to establish the required nexus between that firearm and Epps's drug offense. *See United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005) (finding sufficient evidence to sustain a § 924(c) conviction, in part because "the gun was stored within feet of [the defendant's] drug stash"); *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001) (finding sufficient evidence to sustain a § 924(c) conviction where "the jury could properly have found that Finley kept the shotgun for protection in proximity to the window from which he sold the drugs").

Sixth, Epps, relying on *United States v. Jackson*, 479 F.3d 485, 489 (7th Cir. 2007), challenges the admission of testimony by a police officer regarding a driving experiment in which the officer timed the drive between Tamika Carter's house and the area where Moss was killed. But Epps has not shown that the driving experiment was conducted under conditions that were not "substantially similar" to those that existed on the night of Moss's murder. *Jackson*, 479 F.3d at 489. He therefore does not establish that the district court abused its discretion in admitting the officer's testimony.

Seventh, Epps argues that the Government breached its obligation to disclose exculpatory evidence prior to trial, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), when it did not inform the defense that the Government's expert witness on DNA analysis had rarely been asked to obtain a DNA profile from a shell casing and had never successfully done so before her work on Epps's case. "There are three components of a *Brady* violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the government, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Ulbricht*, 858 F.3d 71, 112 (2d Cir. 2017) (internal quotation marks and brackets omitted). Assuming that the information that Epps identifies was favorable to him and suppressed by the Government, Epps has not shown that its withholding before trial prejudiced him. All of the information was presented at trial, either on direct or cross-examination. Moreover, Epps has not shown that the information would have supported a successful motion to preclude the expert's testimony under Federal Rule of Evidence 702. And, even if Epps could have succeeded in precluding the testimony, we are unpersuaded that the testimony's admission prejudiced Epps in light of the substantial other evidence of Epps's guilt. Thus, we conclude that Epps's *Brady* challenge is without merit.

Eighth, and finally, Epps claims that the district court improperly precluded the defense from presenting an alternate theory of Moss's murder based on her affiliation with motorcycle clubs violated his right to present a defense. A criminal defendant has a constitutional right to present a defense by "offer[ing] the testimony of witnesses, and [compelling] their attendance, if necessary." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). However, "[r]estrictions on presenting evidence do not offend the Constitution if they serve 'legitimate interests in the criminal trial process' and are not 'arbitrary or disproportionate to the purposes they are designed to serve.'" *United States v. Stewart*, 433 F.3d 273, 311 (2d Cir. 2006) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55–56 (1987)). The district court's ruling, properly understood (and as clarified midway through the trial), did not infringe Epps's right to put on a defense because it did not preclude him from offering evidence in support of his theory; the fact that Epps did not later seek to introduce such evidence does not alter this conclusion. Moreover, Epps has not demonstrated that the district court's decision to preclude mention of the theory in the defense's opening statement amounted to an abuse of discretion. *See Salovitz*, 701 F.2d at 21 ("We believe that an opening statement by the defendant is not [a constitutionally] guaranteed right, and that the making and timing of opening statements can be left constitutionally to the informed discretion of the trial judge.").

We have considered all of the parties' contentions on appeal and have found in them no basis for reversal. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7